IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 06-10003-WEB |
| ROBERT T. LOGSDON, | ) ) ) | |
| Defendant. | ) ) | |

**Memorandum and Order**

This matter came before the court on May 17, 2011, for a hearing to determine whether Mr. Logsdon's Conditional Discharge from hospitalization should be revoked. *See* 18 U.S.C. § 4243(g). The court ruled orally at the conclusion of the hearing that the conditional discharge was revoked and that Mr. Logsdon was remanded to the custody of the Attorney General for further treatment. This written memorandum will supplement the court's oral ruling.

I. *Background*.

On November 1, 2006, an indictment was filed charging defendant Robert T. Logsdon with unlawfully threatening to kill the President of the United States, in violation of 18 U.S.C. § 871. Doc. 1. Assistant Federal Public Defender David Freund was appointed to represent him. Doc. 9. A defense motion for psychiatric evaluation was granted, and the results of that evaluation led the court to find that the defendant was not competent to stand trial. The court ordered that he be committed for evaluation and treatment, pursuant to 18 U.S.C. § 4241(d). Doc. 14. After further treatment and evaluation, the court found at a hearing on April 13, 2007

that the defendant's competency to stand trial was restored. However, the evaluation included the examiner's opinion that the defendant's mental illness impaired his ability to appreciate the wrongfulness of his actions at the time of the alleged offense, and the defendant subsequently filed notice of an insanity defense. Doc. 21. On June 11, 2007, the parties entered into a stipulation, adopted by the court, that the defendant was not guilty of the offense by reason of insanity. Doc. 22. The stipulation included an order for further evaluation to determine whether the defendant's release would pose a risk of bodily injury or property damage.

On May 7, 2008, after completion of an additional evaluation, the court held a hearing at which it adopted the findings of a medical panel that Mr. Logsdon suffered from a mental disorder and that his release from custody would create a substantial risk of bodily injury to another person or serious damage to the property of another. Doc. 25. Although the panel concluded that Mr. Logsdon's mental status was sufficiently stable to allow a conditional release under a prescribed regimen of mental health care, it found that an appropriate placement was not yet available. The court therefore ordered that Mr. Logsdon be committed to the custody of the Attorney General for treatment, pursuant to §4243(e).

On April 12, 2011, the court received a report from the Warden of the Federal Medical Center in Rochester, Minnesota, containing the opinion of the facility's medical staff that Mr. Logsdon had recovered to the extent that his conditional release under a prescribed regimen of care would not pose a risk. Doc. 27. *See* 18 U.S.C. § 4243(f). The Certificate of Conditional Release included a discharge plan calling for Mr. Logsdon to abide by various conditions, including that he reside at the Candlerock Residential Care Facility in Cedar Vale, Kansas.

II. *Conditional Release Violation*.

On April 20, 2011, the court entered an agreed-upon order of Conditional Release for Mr. Logsdon. The order included various conditions, including that Mr. Logsdon reside at the Candlerock Residential Care Facility; that he comply with all recommendations of treatment and keep all appointments with the mental health center; that he comply with psychiatric treatment as directed by the treatment team and the U.S. Probation Office; that he abstain from all use of alcohol and other drugs not prescribed by his treating physician; and that he not commit another federal, state or local crime. Doc. 28.

The evidence presented at the May 17, 2011 revocation hearing showed the following. United States Probation Officer Toni Corby has worked on Mr. Logsdon's case and is familiar with the circumstances. Prior to Mr. Logsdon's release, Officer Corby spoke with Logsdon's assigned social worker who was coordinating his release and had the case worker review the conditions in the order with Mr. Logsdon. Mr. Logsdon reviewed and signed the order. He was transported by BOP staff to the Candlerock facility on April 27, 2011. He was arrested approximately five to six hours later for providing alcohol to a minor. The incident was witnessed by a resident of the care facility, who reported it to a staff member. Following his arrest, Mr. Logsdon subsequently was given a breath test at the police station, but the test results showed no alcohol.

As a result of the incident, Mr. Logsdon was discharged from the Candlerock facility and will not be readmitted. Also, as a result of the incident he was unable to keep appointments that had been arranged for him, including his initial intake appointment with the local mental health agency, and with the Social Security office to obtain disability benefits to pay for his stay and

treatment.

Officer Corby subsequently interviewed Mr. Logsdon about the incident. According to her testimony, Mr. Logsdon acknowledged that the violations occurred. He said he left the facility, went to a liquor store and purchased alcohol, and returned to the facility, drank alcohol, and provided alcohol to another resident in the facility.

Mr. Logsdon testified at the revocation hearing. He testified that although he was supposedly drinking, his breath test showed all zeroes. He said he made no threats to anyone and was compliant with the officer who arrested him. He said he took his medications when he had them available. On cross-examination, he said his understanding of the alcohol condition was that he could not drink it, but the condition did not prohibit him from possessing it. He said he purchased alcohol late that night, but that he did not intend to drink it and that he bought it to give to the people of age at the facility that wished to drink it.

The court finds that Mr. Logsdon has violated the conditions of his release. First and foremost, his failure to abide by the rules of the Candlerock facility and his engaging in clearly inappropriate behavior led to his dismissal from the facility and to violation of the condition that he reside at the facility. That condition formed part of the medical regimen deemed necessary by a Risk Assessment Panel. Because of his actions, the facility will not consider him for readmission, and he will not have available the structured environment and supervision the Risk Assessment Panel found he needed. Likewise, his conduct and the consequences of those actions resulted in him failing to keep mental health appointments, also in violation of his conditions. Despite Mr. Logsdon's protestations to the contrary, the circumstances make it highly likely that he purchased alcohol with the intention of consuming at least some of it, even if a breath test

some time after his arrest registered no alcohol in his system. His admissions to the probation officer after the incident confirm this fact. The evidence before the court also shows that he likely violated his conditions by committing a state or local offense, by providing alcohol to a minor.

Section 4243(g) does not specify which party bears the burden of proof on whether the person's continued release would create a substantial risk of bodily injury or serious damage to property. The court concludes the burden is on the defendant, consistent with the provisions of §4243(d) and (f) – although the same result would obtain here even if the burden were on the Government. The court concludes that Mr. Logsdon's continued release would pose a substantial risk of bodily injury to another. As shown by his prior evaluations, Mr. Logsdon has an extensive history of behavioral problems, including threatening behavior. While the instant episode did not involve any threats, Mr. Logsdon's flagrant disregard for the rules of the facility within a few hours of his arrival shows that he is not yet ready for residential placement. While the future cannot be predicted with any certainty, Mr. Logsdon's past conduct, his mental illness, and his violation of conditions within hours of his release all make it highly likely that his continued release would soon devolve into conduct involving a substantial risk of bodily injury to some other person.

III. *Conclusion*.

Pursuant to 18 U.S.C. § 4243(g), the court finds that Mr. Logsdon's failure to comply with his conditions of release and the regimen of care and treatment prescribed for him show that his continued release would create a substantial risk of bodily injury to another person. Accordingly, the motion of the United States to revoke his conditional release (Doc. 36) is

GRANTED. The order of conditional release entered by the court on April 20, 2011 (Doc. 28) is revoked. The defendant Robert T. Logsdon is remanded to the custody of the United States' Attorney General for treatment in a suitable facility.   IT IS SO ORDERED this   19th   Day of May, 2011, at Wichita, Ks.

                                          s/Wesley E. Brown
                                          Wesley E. Brown
                                          U.S. Senior District Judge